# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| WANDA TISHAW, on behalf of herself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) AMSOUTH BANCORPORATION, ) ) Defendant. ) | Civil Action: 4:06-cv-882-RDP |

## FIRST AMENDED COMPLAINT

COMES NOW, Wanda Tishaw, Plaintiff in the above-styled action, on behalf of herself and all others similarly situated, files her First Amended Complaint against AmSouth Bancorporation and AmSouth Bank and in support thereof, states as follows:

### INTRODUCTION

Wanda Tishaw brings this action on behalf of herself and a class of similarly-situated persons to challenge AmSouth Bancorporation and AmSouth Bank's unlawful and unfair practice of permitting garnishment and/or attachment and freezing of accounts which contain only benefits which qualify for protection from execution, levy, attachment, garnishment, or other legal process pursuant to various acts of

1

Congress and its assessment of unfair, illegal, excessive and unconscionable "processing" and insufficient-funds fees on these same funds.  Ms. Tishaw seeks compensatory and punitive damages, restitution, declaratory and injunctive relief, attorneys' fees, costs and expenses.

## PARTIES

1.   Wanda Tishaw is a resident of Fort Payne, Dekalb County, Alabama. Ms. Tishaw has an account with AmSouth Bank, a wholly owned subsidiary of AmSouth Bancorporation.

2.   AmSouth Bancorporation is a Delaware corporation and is a bank holding company of which Defendant Amsouth Bank is a wholly owned subsidiary. AmSouth Bank and AmSouth Bancorporation is engaged in the business of marketing and providing banking and other financial services in the United States including Dekalb County and affirmatively solicits benefit recipients in all states in which it conducts business.  Upon information and belief, AmSouth Bancorporation receives the profits generated from AmSouth Bank's business.

3.   Both Defendants, AmSouth Bancorporation and AmSouth Bank will be hereinafter referred to jointly as "AmSouth" or "Defendants"

## JURISDICTION AND VENUE

4.   Plaintiff repeats and re-alleges paragraphs 1 through 3.

5. This Court has jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 as an action raising a federal question.

6. This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a).

7. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2202 and FED.R.CIV.P. 57 and injunctive relief pursuant to 28 U.S.C. § 2202 and FED.R.CIV.P. 65.

8. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b)(2) as this is the judicial district which the events occurred that gave rise to the causes of action pled below.

## STATUTORY CONSTRUCTION OF EXEMPT BENEFIT PAYMENTS

9. Plaintiff repeats and re-alleges paragraphs 1 through 8.

10. The Social Security Administration ("SSA") administers social security and the Federal Old-Age, Survivors, and Disability Insurance Benefits program (42 U.S.C. §§ 401 *et seq.*) (the "SSI Program"). The SSI Program provides benefits to citizens including retired workers, disabled workers and dependants of disabled or deceased workers ("Social Security payments").

11. The purpose of the SSI Program is to provide Social Security payments as a minimum level of income each month for those who meet stringent financial

requirements. 42 U.S.C. §§ 1381 *et. seq.*; 20 C.F.R. §§ 416.110 (1997).

12. About 9 million recipients of Social Security payments live in poverty or on the brink of poverty. SSA, <u>Fast Facts & Figures about Social Security</u> at 8, 14, 30 (June 2002).

13. As a result, a significant portion of recipients of Social Security payments have little or no money in their bank accounts other than their Social Security payments upon which they are dependent.

14. Congress provided broad protection for Social Security payments to assure that these funds remain available to meet the basic needs of recipients. Specifically, Title 42 of the United States Code section 407(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

15. Similar to the SSA, the Department of Veterans Affairs ("DoVA") administers benefits associated with disability and retirement resulting from service in the U.S. Armed Forces ("VA payments"). 38 U.S.C. § 5120, *et. seq.*; 5 C.F.R. § 178.01 - 178.06.

16. Likewise, the Railroad Retirement Board administers benefits to former railroad employees ("Railroad payments"). 45 U.S.C.§ 231, *et. seq.*

17. The federal government also administers other benefits similar to Social Security, VA and Railroad payments ("Other payments").

18. Social Security payments, VA payments, Railroad payments and Other payments (collectively "Exempt Benefit payments") all qualify for identical protection from execution, levy, attachment, garnishment, or other legal process pursuant to various acts of Congress. *See e.g.* 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 5 C.F.R. § 581.104, and 45 U.S.C. § 231m.

19. Exempt Benefit payments are disbursed by the Financial Management Service (FMS), a bureau of the U.S. Department of Treasury.

20. Initially, recipients of Exempt Benefit payments could elect to receive benefits via electronic transfer or a paper check delivered through the mail.

21. On January 1, 1995, Congress required federal agencies to convert from mailing paper checks to electronic transfers directly into bank accounts. 31 U.S.C. § 3332(a)(1).

22. Since January 2, 1999, the Department of Treasury has required recipients of Exempt Benefit payments to receive same via an account opened with a bank, savings bank, savings and loan association, credit union or similar institution (collectively "financial institutions"). 31 C.F.R. § 208.3 (1998). Recipients of Exempt Benefit payments can only opt out of electronic payment if receipt in this

fashion causes a "hardship." 31 U.S.C. § 3332(f)(2)(A)(I).

23.     The SSA touts the electronic payment of Social Security benefits as safe ("There are no checks to be lost or stolen") and convenient ("You will get your benefits on time, even if you're out of town, sick or unable to get to the bank. It's secure. You are in control of your money."). SSA, FAQ: What are the Benefits of Using Direct Deposit? (available at www.ssa.gov).

24.     The FMS produces a comprehensive guide for financial institutions receiving electronic deposit of Exempt Benefit payments disbursed by the Department of Treasury. This guide, known as The Green Book, is available for download at www.fms.treas.gov/greenbook. U.S. Dep't of Treasury, The Green Book: A Guide to Federal Government Automated Clearing House Payments and Collection (2004).

25.     The Green Book states that all "Treasury disbursed payments can be identified using information contained in the Company/Batch Header Record. ... A '2' in field 11 of the Record identifies the Originator as a Federal government entity or agency." The Greenbook at 2-6. Field 7 of the Record designates the paying agency and the payment type for the transfer (e.g. VA_BENEFIT, SOC_SEC, etc.). The Greenbook at 2-9.

26.     Based on this electronic tag provided by the Department of Treasury with every electronic transfer of Exempt Benefit payments, a financial institution can

readily identify the origin of all deposits into an account at no additional cost.

27. Exempt Benefit payments qualify for protection whether they are electronically deposited or not.

28. Exempt Benefit payments made by paper check can also be readily identified by the fact that the checks are written on United States Treasury checks and state thereon that they are Benefits for a certain month.

29. Despite the assurance given the nation's most-vulnerable citizens that their Exempt Benefit payments will receive protection from execution, levy, attachment, garnishment, or other legal process pursuant to various acts of Congress, many financial institutions, including AmSouth, illegally garnish accounts containing Exempt Benefit payments and collect numerous fees.

## NAMED PLAINTIFF ALLEGATIONS

30. Plaintiff repeats and re-alleges paragraphs 1 through 29.

31. On November 3, 2001, Ms. Tishaw began receiving Social Security payments due to a disability.

32. From that point until today, Ms. Tishaw's Social Security benefits have been paid in the amount of $651.00 per month.

33. In order to receive her benefits, Ms. Tishaw established an account with AmSouth. Thereafter, her Social Security benefits were deposited therein and she paid

a monthly service charge to maintain the account. From this account, Ms. Tishaw withdrew cash and wrote checks to pay for rent, food, telephone, gas, electricity and other bills for herself and her son.

34. Ms. Tishaw, as a recipient of Exempt Benefit payments, and as such is in the class of citizens due protection under 42 U.S.C. §§ 407 and 1383(d)(1).

35. Ms. Tishaw's Social Security check was deposited into her AmSouth account on or about the third of each month.

36. On or about July 1, 2005, AmSouth placed a hold on Ms. Tishaw's account as a result of a writ of garnishment served on it by Discover Bank.

37. Upon receipt of the writ of garnishment, AmSouth was made a party to the action and was under an obligation to determine if the funds it held for the judgment debtor were subject to garnishment or any applicable exemption.

38. Ms. Tishaw was not immediately notified of the hold placed on her account.

39. On or about July 1, 2005, the only funds in Ms. Tishaw's AmSouth account were her Social Security benefits and $1.68.

40. AmSouth knew, or should have known, that Ms. Tishaw's account held exclusively Social Security payments when the garnishment was received.

41. On or about July 3, 2005, Ms. Tishaw went to a neighborhood Wal Mart

store to purchase groceries for the month. Her attempt to pay with her AmSouth debit card was unsuccessful and she was forced to leave without any food.

42. In a letter dated July 6, 2005 (and received some days later), the AmSouth "Law Department" misinformed Ms. Tishaw of the law regarding the writ of garnishment and the hold placed on her account. The letter stated:

> By law, we are required to answer the Garnishment and to pay the amount due, if available, from your account(s) within the specified time. Until we answer the Garnishment, we are required to hold all available funds in your account(s), up to the amount of the Garnishment, together with any deposits made to your account(s) between the date we were served and the date we answer the Garnishment. A hold has been placed on the following account(s) for the amount due:
>
> [account number omitted]
>
> Our Answer will be made on or about July 20, 2005 ... Until that date, the hold may cause outstanding checks to be returned for "insufficient funds." Please also note that your account will be charged a $75.00 processing fee.

43. AmSouth violated federal law by: illegally garnishing Ms. Tishaw's account, and subsequently charging fees for insufficient funds and processing as a result of its illegal actions.

44. The twenty days AmSouth proposed that it take to decide whether and what answer it would make regarding Ms. Tishaw's account is a significant and substantial and unreasonable interruption of access to her Exempt Benefit payments.

45. The writ of garnishment on Ms. Tishaw's AmSouth account was never voluntarily lifted, but was discharged by Order of the Dekalb County District Court, pursuant to 42 U.S.C. § 1383(d)(1), on July 15, 2005.

46. As a result of AmSouth's illegal hold on her account, AmSouth charged Ms. Tishaw more than $300 for "processing" and insufficient fund fees.

47. AmSouth obtained these fees by taking them directly out of Ms. Tishaw's account; she never approved these deductions, nor paid them voluntarily.

48. AmSouth continues to retain the fees it took as a result of its illegal actions despite repeated demand for the return of same.

49. Ms. Tishaw retains a checking account at AmSouth, but is afraid that AmSouth will again illegally garnish her Exempt Benefit payments and deduct "processing" and insufficient fund fees from her account against her wishes in that AmSouth's actions may be easily repeated.

## CLASS ACTION ALLEGATIONS

50. Plaintiff repeats and re-alleges paragraphs 1 through 49.

51. Pursuant to FED.R.CIV.P. 23, Ms. Tishaw brings this action on behalf of herself and a class of persons (hereinafter the "Plaintiff Class") defined as:

> All persons, who within the past six years, have had payments, that qualify for protection from execution, levy, attachment, garnishment, or other legal process pursuant to acts of Congress, deposited into an AmSouth account where AmSouth has set off

against such funds for insufficient funds fees and/or has permitted execution, levy, attachment, garnishment, or other legal process as to such funds.

52. Ms. Tishaw and the Plaintiff Class are hereinafter referred to jointly as "Plaintiffs."

53. Plaintiffs have set up accounts to deposit their Exempt Benefit payments.

54. This requirement is accompanied by the protection provided by 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 5 C.F.R. § 581.104, 45 U.S.C. § 231m and other acts of Congress that said funds will be available to meet Plaintiffs' basic needs and will not be seized, garnished, levied or otherwise compromised by the acts of third party creditors, including financial institutions.

55. In order to help financial institutions meet their legal obligations under 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 5 C.F.R. § 581.104, 45 U.S.C. § 231m and other acts of Congress, every electronic deposit of Exempt Benefits is accompanied by an electronic tag.

56. Through the use of this electronic tag, AmSouth may segregate those accounts in which Exempt Benefit payments are directly deposited.

57. Exempt Benefit payments made by paper checks can also be identified by looking at the face of the check itself which is issued by the United States Treasury and identified as a Social Security payment for a specific month.

58. AmSouth routinely, illegally honors garnishments and/or attachments on accounts that it knows or should know contain Exempt Benefit payments and are exempt from collection.

59. Upon receipt of the writ of garnishment, AmSouth is made a party to the action and is under an obligation to determine if the funds it holds for the judgment debtor are subject to garnishment (if they hold funds the garnishor is entitled to).

60. AmSouth benefits greatly as a result of its illegal actions by collecting a "processing fee" and countless insufficient fund fees from Plaintiffs.

61. AmSouth routinely employs a setoff mechanism (e.g. self help remedies to collect monies owned for insufficient fund fees) against accounts that it knows contain Exempt Benefit payments, and are exempt from seizure via "other legal process."

62. Plaintiffs are unable to state the precise number of potential members of the Plaintiff Class because that information is exclusively in the possession of AmSouth. Plaintiffs are informed and believe and thereon allege that the Plaintiff Class numbers at least in the thousands and is so numerous that joinder of all members would be impracticable. The exact size of the Plaintiff Class and the identity of the members thereof, would be readily ascertainable from AmSouth's records.

63. Questions of law and fact common to the Plaintiffs exist that predominate

over questions affecting only individual members, including the following:

    a.    Whether AmSouth permitted garnishment and/or attachment of Exempt Benefit payments in violation of federal law;

    b.    Whether Plaintiffs are entitled to declaratory and injunctive relief for AmSouth's statutory violations;

    c.    Whether Plaintiffs are entitled to monetary relief for AmSouth's statutory violations;

    d.    Whether AmSouth has been unjustly enriched by deducting fees and charges directly from Plaintiffs' account;

    e.    Whether Plaintiffs are entitled to an equitable accounting, imposition of a constructive trust, disgorgement, resulting restitution, appropriate distribution from said trust and other equitable relief; and

    f.    Whether Plaintiffs are entitled to additional relief.

64. The claims asserted by Ms. Tishaw in the action are typical of the claims of the members of the Plaintiff Class as described above, the claims arise from the same course of conduct by AmSouth and the relief sought is common.

65. Ms. Tishaw will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. She has retained counsel competent and experienced in both consumer protection and class action litigation.

66. A class action is superior to other methods for the fair and efficient adjudication of this controversy as joinder of all members is impracticable.

Furthermore, because the economic damages suffered by the individual class members may be relatively modest, albeit significant, compared to the expense and burden of individual litigation, it would be impracticable for most Plaintiffs to seek redress individually for the wrongful conduct alleged herein. There will be no real difficulty in the management of this litigation as a class action.

**CAUSES OF ACTION**
**Count I – Violation of 42 U.S.C. § 407,**
**42 U.S.C. § 1383(d)(1) and 38 U.S.C. § 5301,**
**45 U.S.C. § 231m and other Acts of Congress**

67.   Plaintiffs repeat and re-allege paragraph 1 through 66.

68.   The referenced federal laws, 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 45 U.S.C. § 231m and/or other Acts of Congress, prohibit garnishment, seizure, attachment or levy of Exempt Benefit payments and place a duty on AmSouth to follow same with respect to Plaintiffs' funds.

69.   AmSouth intentionally, recklessly and/or wantonly breaches the duty placed on it by honoring writs of garnishment and/or attachment served on accounts containing Plaintiffs' Exempt Benefit payments.

70.   AmSouth also intentionally, recklessly and/or wantonly breaches the duty placed on it by charging "processing fees" and countless insufficient fund fees against Plaintiffs' Exempt Benefit payments.

71.   As a result of AmSouth's breach of the duty placed on it, Plaintiffs have

suffered a significant and substantial interruption of access to their Exempt Benefit payments and other economic loss including, but not limited to, charges assessed against Plaintiffs' accounts and depletion thereof by AmSouth.

## Count II – Unjust Enrichment

72. Plaintiffs repeat and re-allege paragraph 1 through 71.

73. AmSouth collects illegal and unjust fees from Plaintiffs when it honors writs of garnishment and/or attachment served on accounts containing Plaintiffs' Exempt Benefit payments in violation of 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 45 U.S.C. § 231m and/or other Acts of Congress which prohibit such garnishment, seizure, attachment or levy.

74. AmSouth's retention of these fees constitutes an unjust gain.

75. Equity and good conscience require that AmSouth perform an equitable accounting, implement a constructive trust over the unjust gain, and disgorge the *corpus* of said trust to Plaintiffs via resulting restitution, as their interests may appear, and to such other recipients as the Court, in equity, may decree.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that the Court:

1. Determine that this action is properly maintained as a Class Action pursuant to FED.R.CIV.P. 23(a);

2. Declare that AmSouth's actions violate 42 U.S.C. § 407, 42 U.S.C. §

1383(d)(1), 38 U.S.C. § 5301, 45 U.S.C. § 231m and/or other Acts of Congress;

    3.    Award compensatory and punitive damages to Plaintiffs for AmSouth's violation of 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, 45 U.S.C. § 231m and/or other Acts of Congress together with attorneys' fees, interest and costs;

    4.    Enter an injunction directing AmSouth to:

        a.    Discontinue garnishment and/or attachment of accounts which contain Exempt Benefit payments;
        b.    Discontinue collecting "processing" and insufficient fund fees resulting from garnishment and/or attachment of accounts which contain Exempt Benefit payments;
        c.    Discontinue collecting "processing" and insufficient fund fees from accounts which contain Exempt Benefit payments;
        d.    Develop procedures to ensure that accounts that contain only electronically-deposited, Exempt Benefit payments will not be illegally garnished;
        e.    Develop procedures to ensure that accounts that contain only electronically-deposited, Exempt Benefit payments will not be illegally debited for fees associated with illegal garnishment and/or attachment;
        f.    Perform an equitable accounting of all accounts upon which fees have been collected as a result of illegal garnishment and/or attachment;
        g.    Implement a constructive trust over all fees collected as a result of such illegal garnishment and/or attachment;
        h.    Disgorge the *corpus* of said trust to Plaintiffs via resulting restitution and to such other recipients as the Court, in equity, may decree; and
        i.    Provide notice and such other rights and remedies as provided or by state and/or federal law.

    5.    Award such other and further relief that this Court deems just and proper.

Submitted this the 27th day of June, 2006.

     /s/ Rebekah Keith McKinney
Herman Watson, Jr.
Rebekah Keith McKinney
Eric J. Artrip
WATSON, JIMMERSON, MARTIN, MCKINNEY,
GRAFFEO & HELMS, P.C.
*Attorneys for Plaintiffs*
203 Greene Street
P.O. Box 18368
Huntsville, Alabama 35804
(256) 536-7423
(256) 536-2689 (fax)

Joe R. Whatley, Jr.
Charlene P. Ford
WHATLEY DRAKE, LLC
2323 Second Avenue North
Birmingham, AL  35203
205-328-9576
205-328-9669 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify on this the 27th day of June, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Larry B. Childs, Esq.
>Randall D. Quarles, Esq.
>WALLER, LANSDEN, DORTCH & DAVIS, LLP
>Suite 1400
>1901 6th Avenue, North
>Birmingham, AL 35203

>/s/ Rebekah Keith McKinney
>Rebekah Keith McKinney