FILED

2006 Aug-25 PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **WANDA TISHAW,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.  4:06-CV-0882-RDP** |
| | } | |
| **AMSOUTH** | } | |
| **BANCORPORATION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

The court has before it AmSouth Bank and AmSouth Bancorporation's Motion for Order to Compel Arbitration, Or, in the Alternative, Motion to Dismiss (Doc. # 14) filed on July 11, 2006. The motion has been fully briefed and was under submission, without oral argument, on August 3, 2006.[1]

### I.    Relevant Facts

In June 2003, Wanda Tishaw opened a checking account with AmSouth Bank, which she has used primarily to deposit monthly Social Security benefits.  (Doc. # 13, at ¶¶ 1, 33, 35).  As part of the process of opening her account, Tishaw signed an "Account Package" form, which includes the following provision:

> By signing below, I also (a) *agree to be bound by the terms of the Bank's customer agreement, rules and regulations, and pricing schedule, as now in force and as amended from time to time* hereafter, related to each account or service listed below, (b) *acknowledge receipt of a copy of the applicable customer agreement* and pricing schedule now in effect; (c) promise that all information on this form is true.

---

[1] On August 11, 2006, Plaintiff filed a Notice of Supplementary Authority attaching another case that she wanted the court to consider (Doc. # 25), which it did.

(Doc. # 14, Ex. A, ¶ 4, Ex. 1) (emphasis added).  The Customer Agreement which Plaintiff

acknowledged receiving and by which she agreed to be bound contains an arbitration provision,

which provides in pertinent part:

> **ARBITRATION PROVISION**
> ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL.
> Except as expressly provided below, you and we agree that either
> party may elect to resolve by BINDING ARBITRATION any
> controversy, claim, counterclaim, dispute or disagreement between
> you and us (any "claim").  This includes, but is not limited to, any
> controversy, claim, counterclaim, dispute or disagreement arising out
> of, in connection with or relating to any one or more of the following:
> . . . (2) any account; (3) any charge or cost incurred pursuant to the
> Agreement; (4) the collection of any amounts due under the
> Agreement or any account; (5) any alleged contract or tort arising out
> of or relating in any way to the Agreement, any account, any
> transaction, any advertisement or solicitation, or your business,
> interaction or relationship with us. . . . This agreement to arbitrate
> shall include any Claim involving our officers, directors, employees,
> agents, representatives, contractors, subcontractors, parent,
> subsidiaries, affiliates, successors, assigns . . ., and any such Claim
> against any of those parties may be joined or consolidated with any
> related Claim against us in a single arbitration proceeding.

(Doc. # 14, Ex. A, ¶ 5, Ex. 2, at 28) (hereinafter "Customer Agreement").

In July 2005, AmSouth Bank placed a hold on Tishaw's account for a period of 14 days after

receiving a writ of garnishment issued by the District Court of DeKalb County, Alabama.  (Doc. #

13, at ¶¶ 36, 45).  Tishaw's account was charged approximately $300 for insufficient funds and other

fees as a result of the hold on the account while the writ of garnishment was pending.   (Doc. # 13,

at ¶ 46).  After the writ was discharged by the state court on July 15, 2005, AmSouth Bank refunded

approximately $128.00 to Tishaw.  (Doc. # 23, Ex. 1, at ¶ 6; Doc. # 13, at ¶ 45).   Since that time,

Tishaw has retained her account with AmSouth Bank.  (Doc. # 13, at ¶ 49).

2

On May 5, 2006, Tishaw filed her Complaint seeking monetary damages and equitable relief against AmSouth Bancorporation (the parent company of AmSouth Bank), including, but not limited to, an injunction directing that Defendant perform an equitable accounting of all similarly-situated accounts, implement a constructive trust over all its unjust gains, and disgorge the *corpus* of said trust via resulting restitution.  (Doc. # 1).

On May 30, 2006, AmSouth Bancorporation, through counsel, filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, arguing that it was not the proper defendant because Plaintiff's checking account was with AmSouth Bank and that Plaintiff's complaint included many factual inaccuracies regarding her account.  (Doc. # 4).  The court denied the motion without prejudice to refiling at a later date, noting that Plaintiff had filed both a motion to amend her complaint altering the scope of her claims and correcting her statement of facts and a Rule 56(f) motion presenting good reasons why additional discovery should be conducted before submission of a dispositive motion.  (Doc. # 12).

On June 27, 2006, Plaintiff filed her First Amended Complaint against both AmSouth Bancorporation and AmSouth Bank (hereinafter collectively "AmSouth"), alleging that, pursuant to 42 U.S.C. § 407, 42 U.S.C. § 1383(d)(1), 38 U.S.C. § 5301, and 45 U.S.C. § 231m, AmSouth recklessly and intentionally breached its duty to refrain from garnishing, seizing, attaching, or levying Exempt Benefit payments like Plaintiff's Social Security benefits.  (Doc. # 13, at Count I).  Plaintiff also asserted a claim for unjust enrichment.  (Doc. # 13, at Count II).  Plaintiff seeks to have this case certified as a class action, and she has asked the court to award compensatory and punitive damages to the class in addition to various equitable relief.  (Doc. # 13, at Relief Requested).

3

Plaintiff has estimated her actual damages to be $128.00. (Doc. # 22, at 2, 20; Doc. # 23, Ex. 1). Thereafter, on July 11, 2006, AmSouth moved to compel arbitration. (Doc. # 14).

## II.    Discussion

There is no dispute that the arbitration clause contained in the Customer Agreement is subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"). "In enacting the FAA, Congress demonstrated a 'liberal federal policy favoring arbitration agreements.'" *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted). As such, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Franklin*, 177 F.3d at 947. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(emphasis in original). Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Plaintiff does not dispute that the requirements to enforce an arbitration agreement under the FAA have been

satisfied in this case.[2]    Rather, Plaintiff argues that AmSouth has waived its right to enforce its

arbitration agreement and that, alternatively, the arbitration agreement "is unconscionable and

unenforceable as a matter of federal law, state law and public policy." (Doc. # 22, at 1).  As Judge

Carnes observed in a similar case:

> This is another arbitration dispute in which the parties are litigating
> whether or not they should be litigating.  The familiar scenario is that

---

[2] Moreover, the court finds that those requirements are satisfied.  The arbitration agreement executed by Plaintiff is unquestionably broad enough in scope to encompass the claims and allegations in this action.  "[I]n order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." *H.L. Fuller Constr. Co. v. Indus. Dev. Bd.,* 590 So. 2d 218, 222 (Ala. 1991).  There is no such exclusion in this case.  The claims in this action, as outlined in the "Relevant Facts" portion of this opinion, *supra,* specifically concern and arise out of the checking account covered by the Account Package and Customer Agreement containing the arbitration agreement.

Moreover, it is clear that the Account Package signed by Plaintiff incorporated the Customer Agreement's written arbitration agreement and that interstate commerce is affected by the transaction of the diverse parties in this case.  Although Tishaw avers that she does not recall receiving the agreement nor being asked to read it (Doc. # 23, Ex. 1, at ¶ 3), AmSouth maintains that it gave Tishaw a copy of the Customer Agreement when she opened the account.  (Doc. # 14, Ex. A, at ¶ 4; Doc. # 23, Ex. 1, at ¶ 3).  All revisions of the Customer Agreement implemented after Plaintiff opened her account have included arbitration clauses substantially similar to the one outlined above, and all revisions were mailed to account holders.  (Doc. # 14, Ex. A, ¶¶ 6, 7, 8, Exs. 3, 4, 5).  Under these facts and the relevant Alabama contract law, the court finds that Tishaw's signature on the Account Package form is sufficient to bind her to the arbitration agreement incorporated therein by reference, even thought she did not sign the arbitration agreement directly. *AmSouth Bank v. Looney*, 883 So.2d 1207, 1214 (Ala. 2003) ("While Looney's affidavit denies that she has ever signed or even seen an arbitration agreement with AmSouth, her affidavit does not deny that she has signed documents which incorporated the arbitration agreement by reference and that acknowledged her receipt of the arbitration agreement. These signed documents are sufficient to bind her to the terms of the arbitration agreement.").  Additionally, the Eleventh Circuit has made clear that "no signature is needed to satisfy the FAA's written agreement requirement [because] . . . . the plain language of § 2 requires that the arbitration provision be "written;" [i]t does not, however, require that the agreement to arbitrate be signed by either party." *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1369 (11th Cir. 2005); *see also Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 62 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature."); *Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F.Supp.2d 1341, 1346 (M.D. Fla. 2001) ("While an agreement to arbitrate must be in writing, there is no requirement that the writing be signed.").

> the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another.

*Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003).

Each of Tishaw's contentions, through which she attempts to avoid arbitration entirely, falls within the category of "gateway matters" which the Supreme Court has instructed that courts and not arbitrators should decide. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, (2003) (holding that courts must decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84  (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.").[3] Thus, the court will address each argument in turn.

### A.      Waiver of the Right to Arbitrate

Tishaw claims that "AmSouth seeks two bites at the apple" by first moving to dismiss the case (or alternatively for summary judgment) and then filing its motion to compel arbitration after its initial motion was denied.  Tishaw believes that AmSouth Bancorporation's May 30, 2006 filing of a potentially dispositive motion as its first appearance (Doc. # 4), after having been served with the complaint on May 8, 2006 (Doc. # 3), demonstrates that AmSouth "voluntarily chose to avail itself of this Court's jurisdiction in order to have Ms. Tishaw's case dismissed with prejudice on the

---

[3] Pursuant to the FAA, this court may consider only issues relating to "the making and performance of the agreement to arbitrate[]," not issues relating to the making of the contract generally.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).  "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator."  *Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998).  In this case, Plaintiff does not challenge the validity of the entire contract. (Doc. # 22, at 11).

merits of her case." (Doc. # 22, at 13). A brief procedural history of this case demonstrates why Tishaw's arguments miss the mark.

Tishaw's initial complaint named as a defendant only AmSouth Bancorporation, which was later identified to be the parent company of wholly-owned subsidiary AmSouth Bank, with whom Tishaw opened the checking account in question. (Doc. # 1). AmSouth Bancorporation's early motion to dismiss addressed the impropriety of naming it as the sole defendant in the case and challenged as inaccurate many of Plaintiff's stated facts and allegations about her account. (Doc. # 4). Plaintiff apparently agreed with many of those arguments; Shortly after the motion was filed, she sought to amend her complaint to add AmSouth Bank as a defendant and to modify her facts and claims to address AmSouth Bancorporation's arguments (including allegations that Plaintiff did not receive electronic deposits of social security funds into her account at the time of the garnishment, that AmSouth did not offer Electronic Transfer Agreements, and that AmSouth did not charge Plaintiff a processing fee with respect to the garnishment in question). (Doc. # 8). The court, having determined that Plaintiff's amended complaint addressed many of the issues raised by the motion to dismiss, and having ascertained that all other arguments presented by the motion required further discovery before consideration by the court, denied the motion to dismiss without prejudice. (Doc. # 12). Once the court permitted Plaintiff's First Amended Complaint alleging, for the first time, claims against AmSouth Bank, AmSouth Bank make its initial appearance by filing a motion to compel arbitration along with AmSouth Bancorporation. (Doc. # 14).

It is well-settled that a party may waive the right to arbitrate by its conduct, such as invoking "litigation machinery" prior to seeking arbitration and acting inconsistently with a right to arbitrate. *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). "Waiver

occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent

with an intent to arbitrate and this participation results in prejudice to the opposing party . . . .

Prejudice has been found in situations where the party seeking arbitration allows the opposing party

to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz v.*

*West of Eng. Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995).

Nonetheless, where parties are "litigating whether or not they should be litigating," the Eleventh

Circuit has suggested that a party has not waived its right to arbitrate. *Anders v. Hometown*

*Mortgage Services, Inc.*, 346 F.3d 1024, 1026 (11th Cir. 2003).

Such is the case here. AmSouth Bancorporation's decision to file as its initial appearance

a motion which sought to clarify Plaintiff's claims, rather than an answer denying them, was nothing

more than an attempt to join the issues early in the litigation in light of apparent factual errors in

Plaintiff's complaint. A mere two months after this case was filed, and only fifteen (15) days after

Plaintiff corrected her complaint to state the proper claims against the proper defendants, both

Defendants moved to compel arbitration. In this Circuit, that is simply not participating in litigation

"to a point inconsistent with an intent to arbitrate." *Cf. Morewitz v. West of England Ship Owners*

*Mutual Protection & Indemity Ass'n (Luxembourg)*, 62 F.3d 1356 (11th Cir. 1995)(holding that an

insurer waived arbitration of a coverage issue where the insurer did not move to compel arbitration

until five years after a direct-action lawsuit was commenced, and during those five years there had

been a dismissal of the case, an appeal and a remand). Because it determines there has been no

waiver here, the court now turns to Plaintiff's substantive arguments regarding the arbitration

agreement.

### B.    Enforceability of the Arbitration Agreement

Tishaw next argues that, for the following reasons, AmSouth's arbitration agreement precludes a "meaningful remedy" for Tishaw's claims and is unenforceable and unconscionable: (1) the agreement's limitation on the availability of class actions, especially given the limited damages and lack of statutory recovery of fees, affords AmSouth "absolute immunity for its violation of federal law;" (2) the cost-prohibitive nature of arbitration would force Tishaw to abandon her claims; and (3) the "vastly greater bargaining power" of AmSouth gave Tishaw "no meaningful choice" about signing an agreement containing "terms that are patently unfair."  (Doc. # 22, at 10-27).

It is clear that arbitration contracts covered by the FAA, including the agreement in this case, are "valid, irrevocable, and enforceable," save upon such grounds as exist at law and in equity for revocation of contracts.  9 U.S.C. § 2.  "As the Supreme Court has recognized, a court can decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable principle of contract law under which the agreement could be revoked." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985)).  "Thus, arbitration agreements under the FAA are enforceable absent fraud, duress, or some other misconduct or wrongful act recognized by the law of contracts for revocation of a contract." *Caley*, 428 F.3d at 1371.  Because state law governs whether an enforceable contract or agreement to arbitrate exists, this court must apply the contract law of Alabama governing the formation of contracts to determine if this agreement is unconscionable.  *See Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.").  Nonetheless, the court must remember that

9

the "federal policy favoring arbitration [] is taken into consideration even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) (quotation marks and citation omitted).

Under Alabama law, "there is nothing inherently unfair or oppressive about arbitration clauses," *Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986), and arbitration agreements are not in themselves unconscionable, *Ex parte McNaughton*, 728 So.2d 592, 597-98 (Ala. 1998). Instead, unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proving unconscionability. *Conseco Fin. v. Murphy*, 841 So.2d 1241, 1245 (Ala. 2002). The Alabama Supreme Court has stated that "'[a]n unconscionable . . . contractual provision is defined as a . . .provision such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Southern United Fire Ins. Co. v. Howard*, 775 So.2d 156, 163 (Ala.2000) (quoting *Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992). Four factors are considered important in determining whether a contract was unconscionable: "In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract." *Layne v. Garner*, 612 So.2d 404, 408 (Ala. 1992).

The Alabama courts have also recognized a distinction between "substantive unconscionability" and "procedural unconscionability," categorizing the above factors as either substantive or procedural and *requiring proof of both* to avoid an arbitration provision on the ground of unconscionability. *Blue Cross Blue Shield v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005) (citing

10

8 Williston on Contracts § 18:10 at 62 ("[A] finding of a procedural abuse, inherent in the formation process, must be coupled as well with a substantive abuse.")).  Substantive unconscionability:

> relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Ex parte Thicklin*, 824 So.2d 723, 731 (Ala.2002) (emphasis omitted) (internal quotations omitted). On the other hand, procedural unconscionability "deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." *Thicklin*, 824 So.2d at 731 (internal quotations omitted).

In this case, the court has determined that Plaintiff's arguments concerning the agreement's limitation on the availability of class actions and the costs of arbitration challenge the substantive unconscionability of the agreement, while her alleged lack of bargaining power implicates the procedural aspect of unconscionability.  The court will analyze each argument separately.

### 1.    Limitation on the Availability of Class Actions

Plaintiff's challenge to the agreement's limitation on class action claims is an uphill battle – in at least three cases the Eleventh Circuit has determined, over objections of unconscionability, that an arbitration agreement may properly bar class action lawsuits.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (affirming an order compelling arbitration of labor claims over the plaintiffs' objections that the provision was unconscionable because it

barred class actions and restricted discovery); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005)(reversing a denial of a motion to compel arbitration of Georgia state-law claims and noting, "We have held . . . that arbitration agreements precluding class action relief are valid and enforceable."); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001) (affirming an order for arbitration of a claim under the federal Truth in Lending Act because "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA.").

Moreover, the Supreme Court has made clear that the absence of "certain litigation devices . . . in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). These devices are the very "characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) (enforcing arbitration agreement with class-action prohibition and rejecting position that it was unconscionable because it immunized company from low-value claims); *see also Randolph*, 244 F.3d at 816 (enforcing arbitration of TILA claims even though arbitration agreement precluded class actions under TILA).

Having considered the relevant law of this Circuit, this court finds that the AmSouth arbitration agreement's prohibition of class actions is consistent with the goals of "simplicity, informality, and expedition" touted by the Supreme Court in *Gilmer*. *See Gilmer*, 500 U.S. at 31. In doing so, the court rejects Plaintiff's argument that the class action bar leaves her without a meaningful remedy because her claims were brought under statutes that do not provide for the shifting of attorney's fees and expenses. Although Plaintiff hypothesizes that, without the option

12

of pursuing a class action where the costs of litigation could be spread among multiple plaintiffs, "she will face AmSouth's team of lawyers alone . . . . [and] will probably abandon this case" (Doc. # 22, at 20), her argument cuts no ice at all in light of her option under the arbitration agreement to pursue a remedy in small claims court, which is designed to resolve low-dollar claims (just like Plaintiff's $128.00 claim) inexpensively and without the cost of attorneys. (Customer Agreement, at 27 ("Each party also has the option of filing an action in small claims court for Claims or disputes within the scope of the small claims court's jurisdiction")). As the Eleventh Circuit noted in *Jenkins,* the option of seeking adjudication in a small claims court instead of arbitration was designed by the American Arbitration Association to *benefit* the consumer and prevent expensive litigation for small actual damages. *Jenkins,* 400 F.3d at 879; *see also Iberia Credit Bureau, Inc.,* 379 F.3d at 175 n. 19 (noting that an arbitration provision which precluded class actions "expressly permit[ted] customers to bring inexpensive small-claims actions").[4] Such an option alleviates Plaintiff's concern about footing an expensive legal bill.

---

[4] As the court in *Jenkins* noted,

> The American Arbitration Association (AAA) has developed a set of principles, known as the Consumer Due Process Protocol, to protect consumers and ensure they are treated equitably in arbitration. *See generally* American Arbitration Association, Consumer Due Process Protocol, (Apr. 17, 1998), http://www.adr.org/protocols. Principle 5 of this Protocol expressly states that consumer arbitration agreements, like those at issue here, should offer all parties the option of seeking adjudication in a small claims tribunal. *Id.* The Comment to Principle 5 explains "access to small claims tribunals is an important right of Consumers" because it provides "a convenient, less formal, and relatively expeditious judicial forum for handling ⋯ disputes" involving small amounts of money. *Id.*

*Jenkins,* 400 F.3d at 879.

The availability of small claims court adjudication also differentiates the agreement at issue here from the one involved in *Leonard v. Terminix International Co.*, 854 So. 2d 529 (Ala. 2002), a case erroneously cited by Tishaw as authority for the proposition that the Alabama Supreme Court has previously rejected class action bars in arbitration agreements. In *Leonard*, the arbitration provision not only barred class actions, but also indirect, special or consequential damages, and damages for loss of anticipated profits. *Leonard*, 854 So. 2d at 534. It was that *combination* of the class action bar *and* the limitation of damages that deprived the plaintiffs in that case of a "meaningful remedy." *Id.* at 538. To the contrary, in this case, Tishaw's arbitration agreement with AmSouth includes no such damages limitation. (Customer Agreement, at 27-28). Tishaw could recover any actual damages she proves just as she could in this court, and, in contrast to *Leonard*, she could pursue an action either in arbitration or in a small-claims court. (Customer Agreement, at 27 ("Each party also has the option of filing an action in small claims court for Claims or disputes within the scope of the small claims court's jurisdiction")).

Given the liberal federal policy favoring arbitration agreements, and the Eleventh Circuit's prior pronouncement that such class action bars are enforceable arbitration agreement provisions, the court finds the limitation on class action lawsuits in AmSouth's agreement to be "reasonably designed to resolve claims as quickly and efficiently as possible, consistent with the goals of arbitration, and not so offensive as to be unconscionable." *Caley*, 428 F.3d at 1379.

### 2.     Cost-Prohibitiveness of Arbitration

Tishaw also claims that the costs of arbitration in this case would be excessive, effectively preventing her from vindicating her rights. Although the Supreme Court has recognized that an arbitration provision may be unconscionable if it imposes excessive costs, a plaintiff must show that

14

she indeed *will* bear such costs if she goes to arbitration.  *Green Tree Financial Corp. v. Randolph*,

531 U.S. 79, 90 (2000).  "[W]here, as here, a party seeks to invalidate an arbitration agreement on

the ground that arbitration would be prohibitively expensive, that party bears the burden of showing

the likelihood of incurring such costs."  *Randolph*, 531 U.S. at 92.

In this case, it is undisputed that the arbitration will be administered by the American

Arbitration Association ("AAA") under its Commercial Arbitration Rules and its Supplementary

Procedures for the Resolution of Consumer-Related Disputes.  (Customer Agreement, at 28).

However, the parties are in dispute about the correct interpretation of the fees outlined under the

AAA's Supplementary Procedures.  According to Tishaw, the Commercial Fee Schedule applies to

her claim pursuant to this language from the Supplementary Procedures:  "If the consumer's claim

or counterclaim exceeds $75,000, *or if the consumer's claim or counterclaim is non-monetary*, then

the consumer must pay an Administrative Fee in accordance with the Commercial Fee Schedule."

(Doc. # 23, Ex. 3, Ex. B, at 5-6).  Under this provision, she estimates that her filing fee and case

service fee would amount to $4,500.00, while the total cost of arbitration to be borne by her, based

upon affidavits from other attorneys who have litigated other cases in arbitration, could be

$12,400.00 to $18,000.00. (Doc. # 22, at 6; Doc. # 23, Ex. 4, at ¶ 13).[5]  Defendants counter by

arguing that, regardless of whether equitable relief is sought, where actual damages are claimed and

do not exceed $10,000.00, the consumer is only responsible for one-half of the arbitrator's fee *up*

---

[5] Ironically, another one of the affidavits submitted by Tishaw actually supports the conclusion that arbitration would be more cost-effective than litigating the case in this court. Herman Watson, Jr., estimates that expert fees for Tishaw's case may exceed $75,000.00, document handling could cost $30,000.00 and litigation expenses could top $400,000.00 (Doc. # 23, Ex. 2), as compared to the $12,400.00 to $18,000.00 estimated for arbitration. (Doc. # 22, at 6; Doc. # 23, Ex. 4, at ¶ 13).

*to a maximum of $125.00* while AmSouth is responsible for all other fees.  (Doc. # 24, at 10; *see* Doc. # 23, Ex. 3, Ex. B, at 5).

The court need not decide which party's interpretation is correct, however, because it finds that regardless of which fee schedule applies, Tishaw has not presented sufficient evidence that the costs of arbitration in this case are excessive or that the costs would otherwise deprive her of the ability to enter the arbitral forum.  First, Tishaw's reliance on the costs of arbitration in other cases as "evidence" of what her total costs could be in this case is a speculative exercise previously rejected by both the Supreme Court of the United States and the Alabama Supreme Court.  "[T]he costs of arbitration in other cases is not sufficient evidence to establish the costs that could occur in this case."  *Randolph*, 531 U.S. at 91 n. 6 ("Randolph's brief lists fees incurred in cases involving other arbitrations . . . . None of this information affords a sufficient basis for concluding that Randolph would in fact have incurred substantial costs in the event her claim went to arbitration."); *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 650 (Ala. 2004).  In fact, as Defendants point out, Tishaw submitted to this court a declaration that relies on the exact affidavit estimating arbitration costs that was rejected by the Alabama Supreme Court in *Leeman*.  As in *Leeman*, Tishaw's affidavits from local plaintiffs' lawyers complaining about the high costs of arbitration and their refusal to take cases on behalf of plaintiffs going to arbitration who lack the prospect of class action status are irrelevant. (Doc. # 23, Ex. 4; Ex. 6). "[C]ounsel's preference for litigation does not render [an] arbitration agreement unconscionable. The fact that counsel is willing to advance the cost of litigation, but not arbitration, does not in any way indicate to this court that the parties' agreement to arbitrate . . . is unenforceable."  *Young v. Jim Walter Homes, Inc.*, 110 F.Supp.2d 1344, 1349 (M.D.Ala.2000).

16

Moreover, regardless of which fee the AAA determines to be applicable to Tishaw's case, as recognized by AmSouth's Customer Agreement, AAA rules provide that any administrative fees may be reduced or deferred in the event a party to the arbitration can prove extreme hardship. (Customer Agreement, at 27, *see also* Commercial Arbitration Rules and Mediation Procedures, Amended and Effective September 15, 2005, R-49 "Administrative Fees.").  In fact, the rules allow an arbitrator to assess and apportion among the parties the fees and expenses involved in arbitration. (*See* Commercial Arbitration Rules and Mediation Procedures, Amended and Effective September 15, 2005, R-50 "Expenses ("All other expenses of the arbitration . . . shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties"); CAMCA (Commercial Arbitration and Mediation Center for the Americas) Mediation and Arbitration Rules, Article 33 "Costs" ("The tribunal shall fix the costs of arbitration in the award.  The tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.  Such costs may include: (a) the fees and expenses of the arbitrators; (b) the costs of assistance required by the tribunal, including its experts; (c) the fees and expenses of the administrator; and, (d) the reasonable costs for legal representation of a successful party.")).  Further, the rules also provide,  "[w]hen a claim or counterclaim is not for a monetary amount, an appropriate filing fee will be determined by the administrator."  (CAMCA (Commercial Arbitration and Mediation Center for the Americas) Mediation and Arbitration Rules,  Administrative Fee Schedule).  That the AAA has great discretion in apportioning, deferring, or reducing the amount of fees to be paid by a consumer has been recognized by both the Eleventh Circuit and the Alabama Supreme Court.  *See Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1028 (11th Cir.

17

2003)(recognizing the cost-shifting AAA rules); *Universal Underwriters Life Ins. Co. v. Dutton*, 736 So.2d 564, 570 (Ala.1999) (noting that the Commercial Rules allow the arbitrator to apportion, defer, or reduce the administrative fees); *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 37-38 (Ala.1998) (rejecting the argument that an arbitration filing fee might be a financial hardship on the basis that the Commercial Rules provide a mechanism to defer or reduce the administrative fees or apportion all fees to one party or the other). Thus, because the AAA rules provide several ways in which the costs of arbitration would be borne by parties other than Tishaw, this court finds "[t]he 'risk' that [Tishaw] will be saddled with prohibitive costs [] too speculative to justify the invalidation of [the] arbitration agreement." *Randolph*, 531 U.S. at 91.[6]

Accordingly, Tishaw's failure to show that the costs of arbitration in this case are so excessive as to deny her the ability to pursue her claim in arbitration defeats her argument that the arbitration provision in the Customer Agreement is unconscionable on that basis.

### 3.    Bargaining Power of AmSouth

Finally, Plaintiff claims that the arbitration agreement is procedurally unconscionable because "AmSouth cannot dispute that it has vastly greater bargaining power than Ms. Tishaw as well as the other putative class members who are primarily elderly and/or disabled." (Doc. # 22, at 21). In determining whether an arbitration clause is procedurally unconscionable, the Alabama Supreme Court looks to whether the consumer could have obtained the product from the Defendant or from another vendor without agreeing to an arbitration provision. *Blue Cross Blue Shield v. Rigas*, 923

---

[6] In fact, even a "loser-pays" attorney's fees rule does not invalidate an agreement to arbitrate on the basis that arbitration is cost-prohibitive because that provision, too, is simply theoretical. The Eleventh Circuit has held that because there is a chance that the plaintiff might prevail in arbitration and incur no attorney's fees, such a provision is not evidence of the prohibitive costs of arbitration. *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261-62 (11th Cir. 2003).

18

So. 2d 1077, 1088-89 (Ala. 2005); *Leeman v. Cook's Pest Control*, 902 So.2d 641, 645 (Ala. 2004),

*American Gen. Fin., Inc. v. Branch*, 793 So.2d 738, 750 (Ala. 2000). Indeed, "[a] primary indicium

of unconscionability in the modern consumer-transaction context is whether the consumer has the

ability 'to obtain the product made the basis of [the] action' without signing an arbitration clause."

*Branch*, 793 So.2d at 750 (quoting *Green Tree Fin. Corp. v. Wampler*, 749 So.2d 409, 415

(Ala.1999)). Importantly, the burden of demonstrating that the product cannot be obtained without

signing an arbitration agreement *is on the party asserting unconscionability*. *Leeman*, 902 So.2d at

645 ("[U]nconscionability is an affirmative defense, and the party asserting the defense bears the

burden of proof.").

Thus, to prove procedural unconscionability, a plaintiff must establish unsuccessful attempts

to secure the service from other providers and to negotiate the deletion of the arbitration provision.

*Rigas*, 923 So. 2d at 1088-89. In this case, Tishaw has done neither. Although she claims that the

Customer Agreement was a "contract of adhesion," (Doc. # 22, at 21), Tishaw has not alleged that

she sought and was unable to obtain a checking account from another financial institution without

agreeing to arbitration. In Alabama, the threshold for establishing that a plaintiff has adequately

"shopped around" is stringent. *See, e.g., Leeman*, 902 So.2d at 645 (finding that plaintiffs' evidence

that "five of the untold total number of pest-control-service providers available to the Leemans in

the Birmingham metropolitan area required the consumer to assent to an arbitration agreement" is

not sufficient to meet their burden of showing that they could not have secured the product without

agreeing to arbitrate). As in *Leeman*, it is undisputed that Tishaw did not attempt to secure a

checking account from another institution before signing the Customer Agreement. *Leeman*, 902

So.2d at 645. In fact, Tishaw has not even presented evidence regarding how many financial

institutions, if any, offer checking accounts with arbitration provisions. "Thus, it is difficult to conclude that [Tishaw] lacked a meaningful choice - and that this lack of choice could render the arbitration provision unconscionable - when in fact [she] never undertook to actually make a choice." *Leeman*, 902 So.2d at 647; *see also Branch*, 793 So.2d at 752 (refusing to hold in a consolidated appeal an arbitration provision unconscionable, in part, because the plaintiff "did not shop around for a loan that did not involve an agreement to arbitrate"); *Conseco Fin. Corp.-Alabama v. Boone*, 838 So.2d 370, 373 (Ala.2002) (holding, in part, that the plaintiffs made no showing that they lacked a meaningful choice because the record did not demonstrate the plaintiffs attempted to "shop around" for a contract that did not call for arbitration); *Green Tree Fin. Corp. of Alabama v. Vintson*, 753 So.2d 497, 504 (Ala.1999) (holding as "meritless" the argument that the plaintiffs had no meaningful choice in assenting to arbitration because they failed to "present evidence indicating that they could not have independently secured financing by an agreement that would not have required arbitration"); *Pitchford v. AmSouth Bank*, 285 F.Supp.2d 1286, 1295 (M.D.Ala.2003) ("Although a party would not have to spend a considerable amount of time and effort to find alternatives, Alabama Courts, nevertheless, do require that a party 'shop around' in order to show that there was no meaningful alternative.").

Moreover, it is undisputed that Tishaw did not attempt to negotiate any of the terms of the Customer Agreement. (Doc. # 23, at Ex. 1).[7] Instead, Tishaw raised her first objection to the

---

[7] Although Tishaw's affidavit claims that she was not "given an opportunity" to discuss the terms of the Customer Agreement, she does not allege that she ever attempted to do so. (Doc. #23, Ex. 1). Moreover, AmSouth has averred that it does sometimes acquiesce to a customer's request to delete an arbitration provision from a bank agreement. (Doc. # 24, at 14-15 (Hardegree Aff., ¶ 2)). As noted earlier, Tishaw's argument that she "does not recall" receiving a copy of the Customer Agreement or the arbitration provision even thought she admittedly signed the Account Package Form is not persuasive.

20

arbitration provision after litigation in this case began.  Aside from counsel's statement that Tishaw is "a disabled person living on less than $1000.00 a month" (Doc. # 22, at 21), there is no evidence to suggest that she was unable to negotiate, and certainly no evidence to suggest that she was "unsophisticated and/or uneducated." *Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler*, 825 So.2d 779, 783 (Ala.2002) (noting that rescission of a contract as unconscionable is usually an extraordinary remedy reserved for the protection of the "unsophisticated and uneducated").  "The law is . . . clear that ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Power Equip. Co. v. First Alabama Bank*, 585 So.2d 1291, 1296 (Ala. 1991).  Accordingly, the court finds that Tishaw has failed to provide any evidence to support her allegation that the arbitration agreement in this case was procedurally unconscionable.

## III.    Conclusion

Because the court finds that Defendants have not waived their right to move for an order compelling arbitration, and because there is simply no evidence that the arbitration agreement in this case is substantively or procedurally unconscionable or otherwise unenforceable, Plaintiff's claims in this case are subject to arbitration.   Accordingly, the court will order the parties to arbitration and dismiss the case without prejudice.[8]  A separate order will be entered.

---

[8] Although the court is aware that a case sent to arbitration may be dismissed with prejudice, *see, e.g., Stiles v. Home Cable Concepts, Inc.,* 994 F. Supp. 1410, 1415-1416 and 1418-1419 (M.D. Ala. 1998) (finding that the matter was due to be dismissed with prejudice and sent to arbitration because "[w]here all of the issues raised in a complaint must be submitted to arbitration . . . a dismissal of the action is appropriate, since retaining jurisdiction and staying the action does not serve judicial economy."); *Clayton v. Woodmen of World Life Ins. Soc'y*, 981 F. Supp. 1447 (M.D. Ala. 1997) (same); *Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal, rather than a stay, is required, when all of the issues raised must be submitted to arbitration, noting that "[g]iven our ruling that all issues raised in this action are arbitrable and

**DONE** and **ORDERED** this ____25th____ day of August, 2006.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."), out of an abundance of caution, the court will dismiss this case without prejudice to the right of any party to file an action enforcing the arbitration award.

22